PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | CASE NO. 1:15-CR-223-2 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE BENITA Y. PEARSON |
| ) | |
| GEORGE EPPS, ) | |
| ) | **MEMORANDUM OF OPINON AND** |
| Defendant. ) | **ORDER** [Resolving ECF No. 123] |

Pending before the Court is Defendant George Epps' Motion for a Judgment of Acquittal. ECF No. 123. The Court has been advised, having reviewed the record, the parties' briefs, and the applicable law. For the reasons explained below, Defendant's motion is denied.

## I. Background

Defendant George Epps was charged with one count of Conspiracy to Commit Health Care Fraud (Count 4), and two counts of Health Care Fraud (Counts 5 and 6). Count 5 charged Defendant with billing for services not rendered, including billing while Medicaid recipients were hospitalized. Count 6 charged Defendant with fraudulently splitting shifts. On June 10, 2016, the jury returned guilty verdicts as to Counts 4, 5, and 6. Defendant filed a Motion for Acquittal on June 24, 2016. ECF No. 123. The Government filed a Response on June 30, 2016. ECF No. 124.

(1:15-CR-223-2)

## II.  Legal Standard

Fed. R. Crim. P. 29(a) provides, in pertinent part, that the district court, on motion by the defendant, "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."  If denied prior to submission to a jury, the motion may be renewed within 14 days after a guilty verdict.  Fed. R. Crim. P. 29(c).  The United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979), *overruled on other ground*, *Schlup v. Delo*, 513 U.S. 298 (1995), established the standard for challenges based on such claimed insufficiency of the evidence, holding:  "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson*, 443 U.S. at 319 (emphasis in original); *see United States v. Smith*, 749 F.3d 465, 476 (6th Cir. 2014); *United States v. Fisher*, 648 F.3d 442, 450 (6th Cir. 2011); *United States v. Warshak*, 631 F.3d 266, 308 (6th Cir. 2010) (en banc).  For defendants who have been convicted, this is a "very heavy burden" to meet.  *United States v. Jones*, 641 F.3d 706, 710 (6th Cir. 2011).

Under the *Jackson* standard, the district court "do[es] not weigh the evidence, assess the credibility of the witnesses, or substitute [its] judgment for that of the jury."  *United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006) (quoting *United States v. Wright*, 16 F.3d 1429, 1440 (6th Cir. 1994)).  Rather, the court must "draw all available inferences and resolve all issues of credibility in favor of the jury's verdict."  *United States v. Salgado*, 250 F.3d 438, 446 (6th Cir. 2001); *see United States v. Overmyer*, 867 F.2d 937, 939 (6th Cir. 1989) (("[T]he court assumes the truth of the evidence offered by the prosecution.") (quoting *United States v. Martinez*, 763

(1:15-CR-223-2)

F.2d 1297, 1312 (11th Cir. 1985)).  "Reversal of a conviction is warranted only if, viewing the record as a whole, the judgment is not supported by substantial and competent evidence." *Smith,* 749 F.3d at 477 (internal quotations omitted).  "Substantial and competent circumstantial evidence by itself may support a verdict and need not remove every reasonable hypothesis except that of guilt."  *United States v. Lee*, 359 F.3d 412, 418 (6th Cir. 2004) (internal quotations omitted).

### III.  Analysis

Defendant challenges the sufficiency of the evidence in two respects.  First, Defendant argues that the Government did not prove the requisite intent to commit Conspiracy to Commit Health Care Fraud (Count 4) and substantive Health Care Fraud (Counts 5 and 6).  ECF No. 123 at PageID #: 926.  Second, Defendant argues that the Government did not present any evidence demonstrating that Defendant personally profited from the health care fraud scheme.  ECF No. 123 at PageID #: 929–30.

**A. Intent**

Defendant argues that the evidence only supports an inference that he was a hard-working office manager, unconnected to the health care fraud committed at Lifeline: "That the work at the office consisted of training new home health aides, maintaining the records, such as time sheets, and processing personnel issues with employees and clients.  Almost all of the billing for Lifeline took place in Columbus.  These were the Defendant's only duties and functions and most of the operations were controlled by the owners of the business."  ECF No. 123 at PageID #: 929.  "There was nothing in the testimony of the fellow employees or the co-defendants that the

(1:15-CR-223-2)

Defendant had the requisite intent to cause the offenses charged and for the jury to find him guilty." Id. When the evidence is reviewed in the light most favorable to the Government, sufficient evidence supports the conviction for Counts 4, 5, and 6.

### 1. Counts 5 and 6: Health Care Fraud

The Court addresses the substantive offenses first. The Indictment charged Defendant with two separate Health Care Fraud schemes: billing for services not rendered (Count 5) and fraudulently splitting shifts (Count 6). The jury was instructed that Defendant could be convicted for Counts 5 and 6 if the following elements were established:

> First, that defendant knowingly and willfully executed, and attempted to execute, a scheme to defraud any healthcare benefit program, to obtain, by means of false or fraudulent pretenses, representations, or promises any of the money or property owned by, and in the control of a healthcare benefit program in connection with the delivery of payment for healthcare benefits, items, or services.
>
> . . . .
>
> Second, that the scheme related to a material fact, included a material representation, or concealment of a material fact.
>
> Third, that defendant had the intent to defraud.

ECF No. 147 at PageID #: 1811. The jury was also instructed that Defendant could be found guilty of Counts 5 and 6 as an aider and abettor if the following were proven beyond a reasonable doubt:

> First, that the crime of healthcare fraud was committed.
>
> Second, that defendant helped to commit the crime or encouraged someone else to commit the crime.
>
> Third, that defendant intended to help commit or encourage the crime.

(1:15-CR-223-2)

> Proof that defendant may have known about the crime, even if he was there when it was committed, is not enough for you to find him guilty. You can consider this in deciding whether the government has proved that he was an aider and abettor, but without more, it is not enough.
>
> What the government must prove is that defendant did something to help or encourage the crime with the intent that the crime be committed.

ECF No. 147 at PageID #: 1815–16. The verdict forms did not distinguish between convictions for Health Care Fraud as a principal or an aider and abettor. *See* ECF No. 108 at PageID #: 750 ("We, the jury, unanimously find Defendant George Epps, (circle one) guilty/not guilty of Health Care Fraud, or Aiding and Abetting Health Care Fraud, in violation of Title 18, United States Code, Sections 1347 at 2, as charged in Count 5 of the Indictment."); *id.* at PageID #: 751 ("We, the jury, unanimously find Defendant George Epps, (circle one) guilty/not guilty of Health Care Fraud, or Aiding and Abetting Health Care Fraud, in violation of Title 18, United States Code, Sections 1347 at 2, as charged in Count 6 of the Indictment.").

Sufficient evidence supports Defendant's convictions for both Count 5 and Count 6. As to Count 5 (billing for services not rendered), Defendant was the Lifeline employee responsible for collecting timesheets from home health aides and sending to Columbus for billing. Abdulazis Warsame testified that Defendant received timesheets from home health aides and checked that the hours on the timesheet were correct. ECF No. 146 at PageID #: 1594–96. After the timesheets were collected, Defendant was responsible for communicating with an individual in Columbus to coordinate what was supposed to be billed, based on the hours worked in the timesheet. *Id.* at PageID #: 1598–99. The timesheets, therefore, allowed Lifeline to bill Medicaid for services rendered by home health aides.

(1:15-CR-223-2)

Defendant had knowledge that it was improper to bill Medicaid while a patient was hospitalized. Delleesa Harris testified that Defendant had told her Lifeline could not bill Medicaid while her mother was in the hospital. ECF No. 145 at PageID #: 1480. Yet, Lifeline billed for services while patients were hospitalized. Eric Sams testified that Lifeline requested timesheets from him while his mother was in the hospital from March 25 through March 29, 2013. Id. at PageID #: 1395–96. Special Agent Morgan testified that Lifeline submitted those timesheets for billing, and that Lifeline did in fact bill for those dates of service. ECF No. 146 at PageID #: 1726–28. Lifeline did not, however, reverse any of these claims. Id. at PageID #: 1733–34.

Defendant also knew that it was improper to bill Medicaid for services to a patient while another agency was providing services for that patient. Jessica Polhe testified that Defendant informed her of an issue with a patient, R.S., who was being billed for Lifeline and another company at the same time. ECF No. 145 at PageID #: 1457–58. Special Agent Morgan testified that Lifeline had timesheets reflecting care of R.S. from September 2, 2013 through September 8, 2013, yet Lifeline billed for care allegedly provided through September 30, 2013. ECF No. 146 at PageID #: 1730–32. Lifeline did not, however, reverse any of these claims for service for R.S. Id. at PageID #: 1734.

By preparing timesheets for services not rendered and conveying this necessary information to billing, Defendant—at a minimum—assisted Lifeline, Abdulazis and Yasin Warsame, and Amir Ahmed commit health care fraud. When viewed in the light most favorable to the Government, Defendant's knowledge that it was improper to bill for services not rendered

(1:15-CR-223-2)

permits the inference that his approval of any improper timesheets demonstrates intent to assist in the commission of health care fraud.  Minimally, Defendant's conviction as to Count 5, therefore, can be sustained under an aider and abettor theory.

As to Count 6 (fraudulently splitting shifts), Medicaid only permits the billing for a split shift when a split shift is medically necessary.  ECF No. 144 at PageID #: 1227.  Defendant knew that Lifeline could not bill for split shifts solely to charge more.  Defendant was present with Amir Ahmed and Jeanette Henry when the three went to Lynette Hicks to do an assessment. ECF No. 145 at PageID #: 1317.  During the meeting with Hicks, Ahmed admitted that Lifeline wanted to treat Hicks on split shifts so Lifeline could get more money, even though Hicks preferred care during straight hours.  *Id.*  Jeanette Kleckley testified that Defendant asked her to split her shift.  ECF No. 146 at PageID #: 1551.  Kleckley declined.  *Id.* at PageID #: 1552.

There is sufficient evidence that Defendant knew that shifts were being improperly split for billing purposes.  For both Hicks and Kleckley, Lifeline billed split shifts for periods that straight time was worked.  *Id.* at PageID #: 1720, 1724.  Similarly, Beverly Smith testified that she worked from 11:00 a.m. to 1:00 p.m. in a straight two-hour shift to care for Eugene Drake. ECF No. 145 at PageID #: 1501.  Her timesheet, however, reflected instead that she worked a split shift, with one shift running from 11:00 a.m. to 12:00 p.m., and a second shift from 12:00 p.m. to 1:00 p.m.  Lifeline submitted a claim for the split shifts.  ECF No. 146 at PageID #: 1735. Split shifts, like all other hours worked, were reflected on the timesheets that Defendant was responsible for collecting and sending to Columbus for billing.  *Id.* at PageID #: 1596–99.

(1:15-CR-223-2)

Evidence established that Defendant was the employee responsible for reviewing the timesheets and communicating to the billing department how much time should be billed.

In addition, both patients and home health aides testified that Defendant had either asked them to utilize split shift care or instructed them to record split shifts on their time sheets.  As mentioned above, Kleckley testified that Defendant asked her to split the shift of the home health aide providing care for her, but Kleckley declined.  ECF No. 146 at PageID #: 1551–52.  Dorris Alexander testified that Defendant asked her to record split shifts for the care that Alexander provided for her mother.  ECF No. 145 at PageID #: 1514.  Alexander also testified that she had not been instructed by a doctor that she needed to split her shifts for her mother.  *Id.* at PageID #: 1515.  In fact, Defendant was the only person who had instructed Alexander to split her shifts.  *Id.*

Defendant's involvement in the preparation of timesheets supports his conviction on Count 6.  By preparing timesheets that fraudulently reflected split shifts, Defendants assisted Lifeline, the Warsames, and Ahmed commit health care fraud.  Defendant knew that a split shift was only appropriate when medically necessary, that split shifts yielded Lifeline more money, knew that shifts were being improperly split, and even asked patients and home health aides to split their shifts.  By approving these time sheets and submitting them for billing, evidence established that Defendant intended to assist Lifeline make more money from the fraudulent split shifts.   Minimally, Defendant's conviction as to Count 6, therefore, can be sustained under an aider and abettor theory.

(1:15-CR-223-2)

### 2. Count 4: Conspiracy to Commit Health Care Fraud

As to Count 4, Conspiracy to Commit Health Care Fraud, the Government needed to prove beyond a reasonable doubt that two or more persons conspired to commit the crime of health care fraud and that Defendant knowingly and voluntarily joined the conspiracy. ECF No. 147 at PageID #: 1803. Abdulazis Warsame testified that Defendant had received training for office management, including how to do timesheets. ECF No. 146 at PageID #: 1584. This training occurred as early as 2009 (*id.* at PageID #: 1585), two years before Lifeline had obtained certification. *Id.* at PageID #: 1666. As part of the certification process, Defendant allowed Lifeline to use his residence to create the appearance that fake patients were living in Cleveland. *Id.* at PageID #1670. The patients did not, however, live at that residence. *Id.* This proves, even if only, circumstantially that Defendant agreed to assist the other defendants obtain certification. The jury could certainly infer that without agreement from Defendant, Lifeline could not have used his residence for this purpose.

Moreover, the evidence discussed as to Counts 5 and 6 also proves that Defendant knowingly and voluntarily joined in the conspiracy to commit health care fraud. Defendant submitted timesheets for services not rendered and for fraudulent split shifts, despite knowing that Lifeline could not bill for those services. Moreover, witnesses testified that both Defendant and Amir Ahmed asked patients to split shifts despite no medical necessity. ECF Nos. 145 at PageID #: 1317; 146 at PageID #: 1551. Agreement and voluntary participation in the conspiracy can be inferred from the fact that Defendant engaged in the same conduct (soliciting fraudulent split shifts) in furtherance of the same objective (obtaining more money from Medicaid for

9

(1:15-CR-223-2)

higher billing for split shifts).  Taken in the light most favorable to the Government, Defendant voluntarily cooperated in the conspiracy by willingly participating in the procedure for submitting fraudulent timesheets for billing and, thereby, enriching themselves, as charged in Count 4.

### B. Financial Gain

Defendant argues that there is no evidence that demonstrates that Defendant gained any money from his alleged participation in the conspiracy to commit health care fraud or in the commission of the health care fraud.  ECF No. 123 at PageID #: 930.  Defendant acknowledges that "[t]here is no question that the health care program sustained a loss of money and property but Defendant did not receive it." *Id.*  At most, according to Defendant, "the evidence presented in the Government's case in chief shows that Defendant was merely an employee in a supervisory capacity and engaged in the day-to-day operations of what he thought to be a legitimate business." *Id.*

Defendant's argument is immaterial because proof of financial gain is not necessary to demonstrate intent to defraud.  "To act with 'intent to defraud' means to act with an intent to deceive or to cheat for the purpose of either causing a financial loss to another or bringing about a financial gain to oneself or another person."  ECF No. 147 at PageID #: 1814; *Pattern Crim. Jury Instr. 6th Cir. 10.05 - Chapter 10.00 Fraud (2015)*; *United States v. Kerley*, 784 F.3d 327, 343 (6th Cir.), *cert. denied*, 136 S. Ct. 350, 193 L. Ed. 2d 232 (2015).  Evidence that Defendant acted with intent to bring about financial gain to another is sufficient.

(1:15-CR-223-2)

In this case, Abdulazis Warsame testified that Defendant had started at an hourly rate of $10 and $11 per hour, but that he gave Defendant a raise to between $13 and $15 an hour as Defendant continued to work at Lifeline. ECF No. 146 at PageID #: 1604–05. Abdulazis Warsame also testified that he would offer Defendant additional payments of cash on top of his regular paycheck. Id. at PageID #: 1606. Special Agent Morgan testified that Lifeline billed Medicaid a total of $3.4 million from October 24, 2011 to October 24, 2013. Id. at PageID #: 1738. Of that amount, $487,000 was the amount of loss calculated based on unnecessary splitting of shifts. Id. at PageID #: 1740. Finally, witnesses testified that Defendant asked them to utilize split shifts when none were worked, solely so that Lifeline could profit more from the billing for split shifts. As mentioned above, Kleckley testified that Defendant asked her to split the shift for her home health aide providing care for her, but Kleckley declined. Id. at PageID #: 1551–52. Dorris Alexander testified that Defendant asked her to record split shifts for the care that Alexander provided for her mother. ECF No. 145 at PageID #: 1514. Taken in the light most favorable to the Government, there is sufficient evidence to establish that Defendant financially gained by maintaining his employment at Lifeline, and that Lifeline financially gained from the health care fraud committed.

(1:15-CR-223-2)

## IV. Conclusion

For the foregoing reasons, Defendant's motion is denied.

IT IS SO ORDERED.

| | |
|---|---|
| September 12, 2016 | /s/ Benita Y. Pearson |
| Date | Benita Y. Pearson |
| | United States District Judge |